[Crim. No. 1156. Department One.—January 28, 1905.]

THE PEOPLE, Respondent, v. CORNELIUS MANNING, Appellant.

CRIMINAL LAW—MURDER—INSTRUCTIONS—SELF-DEFENSE.—Upon a trial for murder, where there was no evidence tending to show self-defense, and the defendant claimed an accidental killing, it was proper to refuse instructions upon the subject of self-defense.

ID.—APPLICABILITY OF INSTRUCTIONS—DUTY OF TRIAL COURT.—The trial court should only give such instructions as are applicable to the evidence in the case, and is not required and ought not to give instructions applicable to some possible theory which is entirely outside of the case as shown by the evidence.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. W. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Nathan C. Coghlan, and Benjamin I. Block, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

VAN DYKE, J.—The defendant by the information was charged with murder. He was tried and convicted of manslaughter and sentenced to ten years' imprisonment in the state prison. The trial commenced in July, 1901, and judgment was rendered September 21, 1901.

The appeal is taken from the order denying a new trial and from the judgment and sentence. The bill of exceptions on appeal was not settled until January 9, 1904.

The facts concerning the homicide are about as follows: On the evening of July 4, 1899, Mr. and Mrs. Kennedy with.

their children made a friendly visit to the home of Mrs. Manning, on Jones Street in San Francisco. The visitors and the family of Mrs. Manning, except the defendant, took dinner together, and after the meal had been finished and the table cleared the defendant came home and asked for his dinner, and his mother told him to help himself. After he had dined, defendant entered into a conversation with the Kennedys, when John Tarleton came in and was engaged in conversation by the defendant. The conversation between defendant and Tarleton resulted in defendant, who was considerably under the influence of liquor, applying to Tarleton offensive and obscene names, and repeating them several times. Thereupon Tarleton left the house. According to the testimony of Kennedy, Mrs. Manning upbraided her son for insulting the guest Tarleton. In this, however, there is some conflict. Mrs. Manning in her testimony says: "Tarleton bid them good-night and went to the door to go, and I went with him. At the door I had a conversation with him. . . . Tarleton was pretty drunk. After I let him out of the door I returned to the kitchen and when I came into the kitchen Kennedy and Mrs. Kennedy had Connie down on the lounge. Mr. Kennedy had him by the throat, and Mrs. Kennedy had him grabbed by the legs, and sitting on him and holding him down, grabbed by her hand. And I said to Mr. Kennedy: 'Please let him get up.' . . . And when he got up he ran out towards the dining-room, and they knocked me down, some of them. I don't know whether it was Mrs. Kennedy or Mr. Kennedy. They shoved up against me I guess and I fell down near the sink." She says after her son got up from the lounge he started to run out through the dining-room, and Mr. Kennedy and Mrs. Kennedy followed. She stayed in the kitchen, and did not see the occurrence in reference to the throwing of the lamp, or the burning of Mrs. Kennedy, except when she was brought back into the kitchen and laid on the lounge. Kennedy and the defendant are the only witnesses to the act that caused Mrs. Kennedy's death. In Kennedy's testimony he says: "My hat dropped off in the scuffle putting him on the lounge and I stooped down to look for my hat. I was about to leave at that time. My wife had the children dressed and we were about to leave, and I thought everything would be all right and we were

going out. And so, all at once, I heard his mother exclaim 'For God's sake, Connie, don't throw that lamp.' That drawed my attention and I turned around without picking up my hat and I saw him in the dining-room with a small lamp in his hand. . . . When I first saw him he had a small lamp in his hand. And then there was a bright light in the dining-room as if the lamp had exploded—overturned or something—and then my mind was on the children because I knew that they were in there dressed. And then he came forward to the end of the dining-room table, that would be on the north end, and he grasped the large lamp in his right hand and picked it up in this manner [showing] and he caught it in his left hand as if to unscrew it. And he threw it right forward in the line of my wife. She was going forward and going into the dining-room at the time from the kitchen. The lamp struck her, must have struck her in the face. She received the contents of the coal oil right over her face and arms here, on her waist here [showing], and of course it burned her in such a manner that she only lived—she died inside of six days afterwards." In the defendant's version of the transaction he says that after he got up from the lounge he went out of the kitchen into the dining-room, and that Kennedy followed him and "He either tripped me or I tripped myself, and I grabbed at the door and fell over on the table and knocked the lamp over, and when I reached for the lamp with my left hand the position of the table was such that anybody in the kitchen would be directly back and not in front of me or to the side of me. This door was just as it is now. I mean the position it is in now. I caught hold of the lamp with my left hand. The oil ran out and burned me, and I tried to right the lamp. That was my intention to right the lamp, and when my hand took fire and a portion of my coat I threw the lamp from me and kept on going. I didn't stop. I did not take the lamp up in my hand and throw it."

The testimony of Kennedy and the defendant are in direct conflict; that of Kennedy seems to be supported by the circumstances surrounding the transaction and was accepted by the jury in rendering their verdict. The appeal in this case is based upon the refusal of the court to give four different instructions requested by the defendant, numbered 8, 9, 13,

and 16. These, in their order, are as follows, with the in-
dorsement of the judge of the trial court giving reasons for
the refusal to give them: ''8. When the defendant inter-
posed his plea of not guilty he put in issue every fact neces-
sary to establish his guilt. Therefore if you believe, under all
the evidence, that in what he did he acted in self-defense,
believing as a reasonable man that he was then and there
in imminent danger of death or great bodily harm, your
verdict should be not guilty. (Refused. No claim of self-
defense either in the evidence or the theories of the parties.
Calculated to mislead the jury. Contravenes defendant's
proposed instructions Nos. 10 and 11, which were properly re-
quested and pertinently given.)'' Instructions Nos. 10 and
11, referred to, are as follows: ''10. If there is a reasonable
doubt whether the defendant threw the lamp in this case,
your verdict should be not guilty.'' ''11. If you are in
reasonable doubt whether the defendant intended to throw
the lamp at anybody, your verdict should be not guilty.''
Instructions 9, 13, and 16, refused by the court, are as follows:
''9. If the evidence shows that the defendant, in his own
house, while not assaulting nor threatening the life of any-
body nor threatening nor attempting to do bodily harm was
assaulted and thrown down, he had the right to resist such
assault with all the force in his power, even to the extent of
taking life. (Refused. For the same reasons as given in
refusing defendant's proposed instruction Number 8.)''
''13. If you believe the defendant threw the lamp at Mr.
Kennedy, and in such throwing was acting in self-defense,
your verdict should be not guilty, no matter how serious the
consequences may have resulted to anybody else. (Refused.
No claim in the evidence that the defendant acted in self-
defense. Incorrect as a statement of the law thereof. Leaves
out the element whether the action of the defendant in throw-
ing the lamp, if he did throw it in self-defense, was pro-
portioned to the danger presented, real or apparent. See
annotation to defendant's proposed instruction No. 12.)''
''16. When the defendant interposed his plea of not guilty
he thereby put in issue every fact necessary to establish guilt.
[Therefore, if you believe from the testimony that the de-
fendant was assaulted by Mr. Kennedy in the dining-room
and thrown with force and violence on the lounge in the

kitchen; that defendant struggled to free himself from Kennedy; that he succeeded in getting up, and then ran out of the kitchen; that Kennedy pursued him, and while in hot pursuit caught up with the defendant at or close to the dining-room table; that thereupon the defendant feared and had good reason to fear that he was in imminent danger of great bodily harm at the hands of Kennedy, then I charge you that under such circumstances the defendant would be justified in defending himself against Kennedy by any and every means within his power. And if in so doing a lamp was thrown and Mrs. Kennedy received burns which resulted in her death, the defendant would not be responsible therefor.] (First sentence given. Portion in brackets refused. Calculated to confuse and mislead jury in the light of the evidence. No such state of facts contained in the evidence. It is not contended that the defendant acted in self-defense. Incorrect as a statement of the law thereof. Leaves out the element as to whether the action of the defendant in throwing the lamp, if he did throw it in self-defense, was proportioned to the danger presented, real or apparent. And for reasons assigned in refusing defendant's proposed instruction No. 12.)''

It is hardly necessary to add anything to what is said by his honor the judge of the lower court in refusing the instructions in question. The charges of the court and instructions given are thirty in number and cover every point necessary to be presented to the jury to aid them in arriving at a proper verdict upon the testimony introduced before them. Appellant in his brief claims the defense was twofold, and says: ''The whole force of this twofold defense, . . . was taken away by the wholesale refusal and modification of defendant's instructions and by the ruling of the lower court which prevented defendant from proving that he acted in self-defense.'' There is nothing in the testimony showing that the defendant was acting in self-defense. According to his testimony, it was accidental. According to the testimony of Mr. Kennedy, he purposely threw the lamp on Mrs. Kennedy, which caused her death. The trial court should only give such instructions as are applicable to the evidence in the case. The court is not required, nor would it be proper, to give instructions applicable to some theory that might be

advanced, but which theory is entirely outside of the case, as shown by the evidence.

The judgment and order appealed from are affirmed.

Angellotti, J., and Shaw, J., concurred.