KLINE, P. J.
I concur in the judgment. I write separately to disassociate myself from that portion of the majority opinion concluding that, because conspiracy and aiding and abetting are materially different forms of derivative criminal liability, instructions pertinent to conspiracy should not be given when prosecution is based upon an aiding and abetting theory. This conclusion, which is illogical and legally erroneous, is no more than an ipse dixit.
I.
The difference between the CALJIC instruction pertaining to first degree felony murder as an aider and abettor (No. 8.27) and that pertaining to first degree felony murder in pursuance of a conspiracy (No. 8.26) is an anomaly.
CALJIC No. 8.27, which was given in this case without modification, provides that “If a human being is killed by any one of several persons engaged in the perpetration of or attempt to perpetrate the crime of [a specified felony], all persons, who either directly and actively commit the act constituting such crime, or who with the knowledge of the unlawful *1084 purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental.”
CALJIC No. 8.26 provides that “If a number of persons conspire together to commit [a specified felony], and if the life of another person is taken by one or more of them in furtherance of the common design, and if such killing is done to further that common purpose or is an ordinary or probable result of the pursuit of that purpose, all of the co-conspirators are deemed in law to be equally guilty of murder of the first degree, whether the killing is intentional, unintentional or accidental.” (Italics added.)
The trial court refused to modify CALJIC No. 8.27 by including limiting language similar to the italicized language in CALJIC No. 8.26. The defense requested such language so the jury would understand that the prosecution’s reliance on the felony-murder rule did not relieve it of the need to establish that the homicides were “the natural and probable consequences” of the robbery. (CALJIC No. 3.02.) The defense’s legal theory was that even under the felony-murder rule appellants could not be found liable if, as appellants claimed, the homicides were an independent product of Chen’s mind, outside of and not in furtherance of the common design to commit the robbery.
In my dissenting opinion in People v. Brigham (1989) 216 Cal.App.3d 1039, 1057 [265 Cal.Rptr. 486]) I explained at considerable length why “[t]he derivative liability of an aider and abettor for the ‘natural and probable consequences’ of a criminal enterprise is indistinguishable from that imposed upon a defendant charged with conspiracy.” (Id., at p. 1058.) “[W]here, as here, there is an agreement between the perpetrator and the defendant, conspiracy and aiding and abetting are simply different ways of articulating the same theory of derivative liability. The standard of causation is not subjective in one instance and objective in the other; the ultimate question in both contexts is whether, from an objective point of view, the crime charged was the reasonably foreseeable result (i.e., the ‘natural and probable consequence’) of the criminal enterprise embarked upon.” (Id., at p. 1059, original italics.) I will not here reiterate all of the reasons “ ‘[conspiracy principles are often properly utilized in cases wherein the crime of conspiracy is not charged in the indictment or information’ (People v. Durham [1969)] 70 Cal.2d 171, 180, fn. 7 [74 Cal.Rptr. 262, 449 P.2d 198] [fn. omitted]), particularly aiding and abetting cases.” (Id., at p. 1064, citing People v. Durham, supra, 70 Cal.2d at p. 180; People v. Belmontes (1988) 45 Cal.3d 744, 789 [248 Cal.Rptr. 126, 755 P.2d 310]; People v. Washington *1085 (1969) 71 Cal.2d 1170, 1174 [81 Cal.Rptr. 5, 459 P.2d 259, 39 A.L.R.3d 541]; People v. Pike (1962) 58 Cal.2d 70, 88-89 [22 Cal.Rptr. 664, 372 P.2d 656]; People v. Ditson (1962) 57 Cal.2d 415, 447 [20 Cal.Rptr. 165, 369 P.2d 714].)
In the present case, the fact of the conspiracy is indisputable. Therefore, the refusal of the district attorney to formally charge a conspiracy, which the trial court seemed to agree was calculated to deprive appellant of the benefit of the limiting language in CALJIC No. 8.26, is irrelevant. For the trial court to ignore the conspiracy simply because the district attorney did so was an abdication of its responsibility to insure that the jury is instructed on the principles of law connected with the facts before the court, which are necessary for the jury’s understanding of the case. (People v. Sedeno (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].)
II.
Though I disagree with the reason the trial court and my colleagues believe it was unnecessary to give the requested instruction, I do not believe reversal is required.
Appellants’ claim that the killing of the victims was not a reasonable and probable consequence of the common plan is factually untenable. Unlike Brigham, this is not a case in which the perpetrator arguably abandoned the plan to murder the intended victim and killed another person for an independent reason outside the agreed upon criminal enterprise. There was never any question in this case as to who the targets were; appellants and their cohorts always intended that there would be a robbery in or near the victims’ home by armed assailants they described as a “hit squad.” There is no evidence members of the “hit squad” contemplated anyone would survive their “preemptive strike.”
Appellant Anderson, the bodyguard of appellant Novak, tried to execute the victims himself. The prosecution showed that the killings were expressly anticipated by Novak, whose Uzi was used in the attack. Even if a juror could credit Novak’s testimony that he did not intend or believe the victims would die, there was no substantial evidence that the gunmen were not acting in furtherance of the criminal plan or that, from an objective point of view, the homicides were not the reasonably foreseeable result of the criminal enterprise. Therefore, even if it was error to refuse the requested instruction,[1] the error was harmless beyond a reasonable doubt; appellants could not have *1086 achieved a more favorable determination had their instructions been given as requested. (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)
In People v. Jones (1989) 207 Cal.App.3d 1090, 1098 [255 Cal.Rptr. 464], the court concluded, on similar facts, that it was harmless error to fail to properly instruct regarding attempted murder as a natural and probable consequence of the planned robbery: “in light of evidence that appellants] knew [the actual gunman] was a violent, desperate character and that he was armed with a gun for the purpose of committing robbery, the error was harmless beyond a reasonable doubt.” As our Supreme Court recently concluded in People v. Cox (1991) 53 Cal.3d 618 [280 Cal.Rptr. 692, 809 P.2d 351], in the context of aiding and abetting liability for a similar “hit” at the home of the victims, “even if [appellant] meant only to encourage [a robbery during] an assault with deadly weapons, no reasonable jury would have concluded that the homicides were not a natural and probable consequence of such violence. [Citations.]” (Id., at p. 669.)
For the foregoing reasons, I concur only in the result reached in part IIA of the majority opinion; I fully concur in the remainder of the opinion.
Appellants’ petitions for review by the Supreme Court were denied December 12, 1991.

Because it is possible to conclude that there was no evidence deserving of consideration that the killings were outside the agreed upon criminal enterprise, it is arguable that the instructions could properly have been refused for that reason. (People v. Flannel (1979) 25 *1086 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1]; People v. Sedeno, supra, 10 Cal.3d 703, 716, disapproved on other grounds by People v. Flannel, supra, at p. 684.)