[Crim. No. 38520. Second Dist., Div. Four. Dec. 3, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS ALFONSO VALENZUELA, Defendant and Appellant.

384

COUNSEL

Jeffrey J. Stuetz, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Edward T. Fogel, Jr., Assistant Attorney General, for Plaintiff and Respondent.

OPINION

McCLOSKY, J.—On July 15, 1985, defendant Jesus Alfonso Valenzuela filed with this court a motion to recall the remittitur of our decision filed July 8, 1981, affirming a judgment of conviction entered after a jury found defendant Jesus Valenzuela guilty of first degree murder and assault with a deadly weapon and found that he personally used a firearm during the commission of both offenses after the trial court struck the use allegation as to the murder count.

This motion, however, was neither supported by any affidavits, or declarations nor based "on stipulation setting forth facts which would justify the granting of [the] motion." (See Cal. Rules of Court, rule 25(d).) Accordingly, on September 20, 1985, this court issued its order which read in part as follows: "Defendant having failed to comply with California Rules of Court, rule 25(d), his motion to recall the remittitur filed on July 15, 1985, is denied without prejudice to his filing, within 30 days from the date of this order, a motion to recall the remittitur which complies with California Rules of Court, rule 25(d)."

On October 18, 1985, defendant filed with this court a new notice of motion and motion to recall the remittitur now supported by the declaration of Jeffrey J. Stuetz dated October 17, 1985, which sufficiently complied with California Rules of Court, rule 25(d). We accordingly consider the motion filed October 18, 1985, to recall the remittitur.

On appeal, defendant Valenzuela was represented by different appointed counsel. No petition for hearing was filed in the California Supreme Court.

The only contentions raised in defendant Valenzuela's appeal were that the trial court erred in denying Valenzuela's motions for mistrial and in refusing his proffered jury instructions. The sufficiency of the evidence supporting defendant's conviction was not challenged.

The grounds alleged for the recall of the remittitur are the following:

(1) *Beeman* error was committed;

(2) The evidence adduced at trial was insufficient to support his conviction for murder;

(3) The jury was inadequately instructed on the essential elements of assault with a deadly weapon in that they were not instructed on the definition of assault; and

(4) He was denied the effective assistance of appellate counsel because that counsel (a) filed an inadequate opening brief, (b) failed to augment the record on appeal to include a transcript of jury voir dire and the opening statements and closing arguments of counsel, (c) failed to attack the aiding and abetting instruction given to the jury, (d) failed to challenge the sufficiency of the evidence to support his murder conviction and (e) failed to seek reversal of his assault with a deadly weapon conviction on the ground that the jury was not fully instructed on all the essential elements of the crime.

In a letter dated July 30, 1985, the Attorney General's office advised this court that it would not file any opposition to defendant's motion to recall the remittitur. It did, however, request the opportunity to respond to any issues that are raised if and when defendant's motion to recall the remittitur is granted.

■ Defendant contends that because the jury could have convicted him under an aiding and abetting theory, *Beeman* error (*People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318]) was committed which requires the recall of the remittitur.

At defendant's trial, the trial court instructed the jury in accordance with the then extant 1979 revisions of CALJIC Nos. 3.00 and 3.01 (1979 rev.)[1] which respectively defined principals and aiding and abetting.

---

[1]CALJIC No. 3.00 (1979 rev.) provided: "The persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include: [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] 2. Those who, with knowledge of the unlawful purpose of the one who does directly and actively commit or attempt to commit the crime, aid and abet in its commission or attempted commission, or [¶] 3. Those who, whether present or not at the commission or attempted commission of the crime, advise and encourage its commission or attempted commission. [¶] [One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.]"

CALJIC No. 3.01 (1979 rev.) provided: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime. [Mere presence at the scene of a crime and failure to take steps to prevent a crime do not in themselves establish aiding and abetting.]"

In *Beeman,* our state's high court later concluded "that the weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. [Citations.]" *(People* v. *Beeman, supra,* 35 Cal.3d at p. 560, italics in original.)

Having so concluded, the *Beeman* court held the 1979 revision of CALJIC No. 3.01 to be erroneous, noting that it "inadequately defines aiding and abetting because it fails to insure that an aider and abettor will be found to have the required mental state with regard to his or her own act." *(People* v. *Beeman, supra,* 35 Cal.3d at p. 560.)

The 1979 revision of CALJIC No. 3.00 which defines principals, too, is deficient under *Beeman* because it effectively removes the issue of criminal intent from the jury's consideration. *(People* v. *Caldwell* (1984) 36 Cal.3d 210, 224 [203 Cal.Rptr. 433, 681 P.2d 274].)

These erroneous instructions abridge constitutional notions of due process by permitting a jury to convict a criminal defendant of an offense under an aiding and abetting theory without finding the element of intent which is essential to a conviction.

■ Because the *Beeman* decision resolved a conflict among lower court decisions (35 Cal.3d at pp. 556-561; *People* v. *Guerra* (1984) 37 Cal.3d 385, 401, fn. 14 [208 Cal.Rptr. 162, 690 P.2d 635]), the ordinary assumption of retrospective operation takes full effect. *(Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 37 [196 Cal.Rptr. 704, 672 P.2d 110].) Hence, the *Beeman* decision should be retroactively applied to those cases which were not yet final at the time that decision was handed down. *(People* v. *Minichilli* (1984) 161 Cal.App.3d 660, 670 [207 Cal.Rptr. 766]; cf. *People* v. *Garcia* (1984) 36 Cal.3d 539, 547-550 [205 Cal.Rptr. 265, 684 P.2d 826], cert. den., *California* v. *Garcia* (1985) — U.S. — [84 L.Ed.2d 366, 105 S.Ct. 1229]; see also *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862].)

*Beeman* was decided on February 6, 1984. Defendant's judgment of conviction became final in 1981, and therefore could not be the basis of a successful motion to recall the remittitur. To the extent the motion is based on claimed *Beeman* error, it is denied.

In light of the conclusion we shall reach, we need not, and do not at this juncture, decide whether defendant was prosecuted upon the premises that he was the actual perpetrator of the murder or under an aiding and abetting theory or if, as a matter of law, the jury found defendant guilty as the direct perpetrator of the offense. We note that while the jury found that the de-

fendant personally used a firearm in the commission of the murder, the trial judge struck that use allegation.

Defendant next contends that we should recall the remittitur because (1) the identification evidence is insufficient to support his murder conviction and because (2) the jury was not adequately instructed on the essential elements of assault with a deadly weapon. Neither of these is an independent ground for recall of the remittitur. The remedy of recall of the remittitur is, however, properly granted if the failure to challenge the sufficiency of the evidence and the adequacy of jury instructions results in the denial of effective assistance of counsel on appeal.

Since a claim of incompetency of appellate counsel is cognizable in a habeas corpus proceeding (*In re Banks* (1971) 4 Cal.3d 337, 343 [93 Cal.Rptr. 591, 482 P.2d 215]; *In re Spears* (1984) 157 Cal.App.3d 1203, 1209-1210 [204 Cal.Rptr. 333]) and when an error is of such dimension as to entitle a criminal defendant to habeas relief, "[t]he remedy of recall of the remittitur may then be deemed an adjunct to the writ, and will be granted when appropriate to implement the defendant's right to habeas corpus."[2] (*People* v. *Mutch* (1971) 4 Cal.3d 389, 396-397 [93 Cal.Rptr. 721, 482 P.2d 633].)

We, therefore, address defendant's contention that the remittitur should be recalled and his appeal reinstated because he was denied the effective assistance of counsel on appeal.

The specific duties of appointed appellate counsel were set forth by the Supreme Court in *People* v. *Feggans* (1967) 67 Cal.2d 444, 447-448 [62 Cal.Rptr. 419, 432 P.2d 21] as follows: "Counsel must prepare a brief to assist the court in understanding the facts and the legal issues in the case. The brief must set forth a statement of the facts with citations to the transcript, discuss the legal issues with citations of appropriate authority, and argue all issues that are arguable. Moreover, counsel serves both the court and his client by advocating changes in the law if argument can be made supporting change. If counsel concludes that there are no arguable issues and the appeal is frivolous, he may limit his brief to a statement of the facts and applicable law and may ask to withdraw from the case, but he must not argue the case against his client. . . . (*Anders* v. *California* [1967] 386 U.S. 738, 741-742 . . . .) If any contention raised is reasonably arguable, no matter how the court feels it will probably be resolved, the court must appoint another counsel to argue the appeal."

---

[2]In fact, under somewhat similar circumstances the Supreme Court in *In re Smith* (1970) 3 Cal.3d 192, 203-204 [90 Cal.Rptr. 1, 474 P.2d 969], treated a petition for writ of habeas corpus as a motion to recall the remittitur.

In *In re Smith, supra,* 3 Cal.3d 192, 195, the Supreme Court declared that *Anders* and *Feggans* do not require appellate counsel "to contrive arguable issues," but held in that case that "each of the counts on which petitioner was convicted was potentially vulnerable to legitimate and provocative appellate contentions that should have been manifest to an alert and responsive attorney." (*In re Smith, supra,* 3 Cal.3d at p. 198.) After delineating the arguable issues which counsel on appeal failed to raise, the *Smith* court stated: "We have catalogued the arguments which petitioner's counsel failed to offer on behalf of his client, not because we conclude that petitioner was likely to obtain a reversal on appeal, but only to demonstrate that his appellate counsel did not render the thoughtful assistance to which he was entitled." (*Id.,* at p. 202.)

The *Smith* court after expressly noting that "[p]etitioner need not establish that he was entitled to reversal in order to show prejudice in the denial of counsel," went on to "hold that the inexcusable failure of petitioner's appellate counsel to raise crucial assignments of error, which arguably might have resulted in a reversal, deprived petitioner of the effective assistance of appellate counsel to which he was entitled under the Constitution." (*In re Smith, supra,* 3 Cal.3d at pp. 202-203.) The court then transferred the matter back to the Court of Appeal "with directions to recall its remittitur, vacate its decision, reinstate the appeal, and appoint other counsel for appellant." (*Id.,* at p. 204.)

In *People* v. *Rhoden* (1972) 6 Cal.3d 519 [99 Cal.Rptr. 751, 492 P.2d 1143], another case involving a claim of incompetence of appellate counsel, the court, as in *Smith,* "catalogued the contentions which defendant's appellate counsel failed to raise not to imply how the merits of the appeal should have been resolved but to emphasize the gross deficiencies in counsel's presentation." (*Id.,* at p. 529.) Having concluded that defendant had been denied his constitutional right to the effective assistance of counsel on appeal, the *Rhoden* court stated that defendant was "entitled to have his entire appeal rebriefed and reargued by competent counsel, and its merits redetermined by the Court of Appeal." (*Ibid.*)

In *People* v. *Scobie* (1973) 36 Cal.App.3d 97, 98-99 [111 Cal.Rptr. 600], we concluded that the court in *Smith* "carefully pointed out that it was not holding that any of the arguable issues had merit as grounds of reversal." We further noted that "[t]he holding of the *Smith* case is that due process required that these issues be argued whether or not the record contained ground for reversal" and that "[i]t is thus clear that the Supreme Court has determined that there is a category of arguable-but-unmeritorious issues which must be argued as a requirement of due process on appeal. [¶] . . . To follow *Smith* and *Rhoden* we are required to judge not only the merits of the appeal but the performance of counsel. A defendant may have been fairly tried and justly convicted, and have no ground of reversal, yet be

entitled to attack the judgment of the appellate court, under *Smith* and *Rhoden,* because of deficiency in the performance of his appellate attorney." (*Ibid.,* fn. omitted.)

In *People* v. *Johnson* (1981) 123 Cal.App.3d 106 [176 Cal.Rptr. 390], cert. den., *Johnson* v. *California* (1982) 457 U.S. 1108 [73 L.Ed.2d 1318, 102 S.Ct. 2910], Division Two of the Fourth District Court of Appeal rejected the *Scobie* concept of "arguable-but-unmeritorious" and held that "an arguable issue on appeal consists of two elements. First, the issue must be one which, in counsel's professional opinion, is meritorious. That is not to say that the contention must necessarily achieve success. Rather, it must have a reasonable potential for success. Second, if successful, the issue must be such that, if resolved favorably to the appellant, the result will either be a reversal or a modification of the judgment." (*Id.,* at pp. 109, 112; see also *People* v. *Von Staich* (1980) 101 Cal.App.3d 172, 175 [161 Cal.Rptr. 448], and accompanying fn.)

In *In re Spears, supra,* 157 Cal.App.3d 1203, 1211, Division Three of the Fourth District Court of Appeal finding the *Johnson* interpretation of the concept of "arguable" issue to be more convincing than our interpretation of the term in *Scobie,* held "that for an issue to be an arguable issue on appeal it must be reasonably arguable that there is prejudicial error justifying reversal or modification of judgment" and that "*Smith* made it clear that it is not the duty of appellate counsel to 'contrive arguable issues.' (*In re Smith, supra,* 3 Cal.3d at p. 198.)"

*Scobie* does not, as *Johnson* and *Spears* intimate, stand for the proposition that appellate counsel must raise frivolous issues in order to comply with the constitutional mandate of due process, nor does it require counsel to "present marginal, nay, hopeless issues . . . ." (*People* v. *Johnson, supra,* 123 Cal.App.3d at p. 110.) Cognizant that *Smith* expressly notes that appellate advocates are not required "to contrive arguable issues" (*In re Smith, supra,* 3 Cal.3d at p. 198) we expressly noted in *Scobie* that there was "no constitutional necessity" for appellate counsel to include a legally frivolous argument "as an 'arguable' contention in his brief." (*People* v. *Scobie, supra,* 36 Cal.App.3d at p. 101.) *Scobie* simply holds that in order to establish ineffective assistance of appellate counsel it is not necessary to show that an unargued "arguable" issue would result in the actual reversal of the judgment. This conclusion is clearly mandated by the *Smith* court's statement that "[p]etitioner need not establish that he was entitled to reversal in order to show prejudice in the denial of counsel." (*In re Smith, supra,* 3 Cal.3d at p. 202.)

In differentiating between "an unmeritorious contention which appellate counsel must argue, and an unmeritorious contention which he need not argue" (*People* v. *Scobie, supra,* 36 Cal.App.3d at p. 99), a court must

seek guidance from *Smith*'s teaching that due process is abridged when counsel on appeal inexcusably fails "to raise crucial assignments of error, which arguably might have resulted in a reversal, . . ." (*In re Smith, supra,* 3 Cal.3d at p. 202.) "Arguable" issues under *Smith,* then, are those which raise "potential assignments of error"—i.e., amount to "potentially successful contentions on appeal . . . ." (*In re Smith, supra,* 3 Cal.3d at p. 203.)

■ The question of ineffective assistance of appellate counsel must be decided on a case-by-case basis, "and the determination of each will depend on whether the appellant's counsel failed to raise assignments of error which were crucial in the context of the particular circumstances at hand." (*In re Smith, supra,* 3 Cal.3d at p. 203.)

A review of the brief submitted by defendant reflects that appellate counsel failed in his duty to assist the court in understanding the facts of this case and to argue all arguable issues. (*People* v. *Feggans, supra,* 67 Cal.3d at p. 447.)

With respect to the facts of the case, the statement of facts is comprised of four sentences with no citations to the record on appeal. In its entirety, the statement of facts reads as follows:

"On or about October 31, 1979, Abraham Paul Gonzales suffered a gunshot wound to the head, causing his death. On the same date and roughly in the same location, Mark Martinez was wounded by a gunshot to his leg.

"*Prosecution Case*

"The prosecution contended at trial that appellant JESUS ALFONDO [*sic*] VALENZUELA fired both of the shots, thus committing the murder of Abraham Paul Gonzales and an assault with a deadly weapon upon Mark Matinez [*sic*].

"*Defense Case*

"Appellant contended that he was not guilty of the crimes charged against him."

■ Ten months before defendant's notice of appeal was filed, the Supreme Court in *In re Johnny G.* (1979) 25 Cal.3d 543, 547-548 [159 Cal.Rptr. 180, 601 P.2d 196], concluded that the adoption of the Evidence Code did not change its holding in *People* v. *Gould* (1960) 54 Cal.2d 621, 631 [7 Cal.Rptr. 273, 354 P.2d 865], that "[a]n extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to

sustain a conviction in the absence of other evidence tending to connect the defendant with the crime."

In the case at bench, none of the witnesses at the trial identified defendant as the person who shot and killed Abraham Gonzales. A detective, Deputy Jones, who interviewed Mark Martinez testified that while Martinez did not identify the person who shot him, he did state that the male who had shot him had also shot Abraham Gonzales. The detective then testified that when later shown mug shots, Mark Martinez identified defendant as the person who had shot him in the leg.

Because "[a]n extrajudicial identification that cannot be confirmed by the witness at trial, . . . [is] lacking in sufficient reliability and substantiality to form the sole identification evidence on which the conviction was based" (*In re Johnny G., supra,* 25 Cal.3d at p. 547), and because a determination that the evidence is insufficient to support the jury's finding that appellant is guilty of murder would require reversal of that charge and would bar retrial under the federal double jeopardy clause (*id.,* at p. 546), it was clearly incumbent upon appellate counsel to attack the sufficiency of the evidence supporting defendant's murder conviction. Moreover, after objection the trial judge then told the jury to disregard that part of the answer of Deputy Jones in which Deputy Jones testified that Martinez had told him that the same person who shot him had shot Abraham Gonzales. The record was thus stripped of even that scintilla of identification evidence as to who shot Abraham Gonzales. It is thus obvious that appellate counsel should have briefed and argued the sufficiency of the evidence issue.

Appellate counsel failed to raise yet another "arguable" issue. Defendant was convicted of assault with a deadly weapon, but the jury was not instructed on the elements of simple assault. This potential assignment of error should have been discovered by appellate counsel during his review of the transcripts.

It is firmly established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068]; italics added.) A "defendant has a constitutional right to have the jury determine every material issue presented by the evidence." (*People v. Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33], disapproved in part on other grounds *People v. Sedeno* (1974) 10 Cal.3d 703, 720, 721 [112 Cal.Rptr. 1, 518 P.2d 913].)

"[E]ven in the absence of a request, a trial court must instruct on the general principles of law governing the case, i.e., those principles rele-

vant to the issues raised by the evidence, but need not instruct on specific points developed at trial. 'The most rational interpretation of the phrase "general principles of law governing the case" would seem to be as those principles of law *commonly* or closely and openly connected with the facts of the case before the court.' [Citations.]" (*People* v. *Flannel* (1979) 25 Cal.3d 668, 680, 681 [160 Cal.Rptr. 84, 603 P.2d 1]; fn. omitted.)

Additionally, the trial court has a *sua sponte* duty to give explanatory instructions even in the absence of a request when the terms in an instruction "have a 'technical meaning peculiar to the law.'" (*People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816], quoting *People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].) No such duty is imposed when the terms "are commonly understood by those familiar with the English language, . . ." (*People* v. *Anderson, supra,* 64 Cal.2d at p. 639.)

■ In the present case, the jury was instructed in accordance with CALJIC No. 9.03 that in order to prove the commission of assault with a deadly weapon, it is necessary that there be proof that a person was assaulted and that said assault was committed by the use of a deadly weapon or instrument.

"The legal definition of an assault is not one commonly understood by [persons] familiar with the English language." Therefore, in all cases in which a defendant is charged with simple assault or aggravated assault, CALJIC No. 9.00 which defines assault, or an equivalent instruction must be given *sua sponte* by the trial judge. (See *People* v. *McElheny* (1982) 137 Cal.App.3d 396, 403-404 [187 Cal.Rptr. 39].)

The jury was not instructed in accordance with CALJIC No. 9.00 (1979 rev.) which reads that an "assault is an unlawful attempt, coupled with a present ability, to commit a wrongful act by means of physical force upon the person of another." Unless "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions," the issue must be deemed to have been removed from the jury's consideration and would require reversal of the judgment as to the assault with a deadly weapon count. (*People* v. *Sedeno, supra,* 10 Cal.3d 703, 721.) Appellate counsel failed to raise that question in the appellate brief. (See *People* v. *Sedeno, supra,* 10 Cal.3d 703, 721.)

Defendant also maintains that his appellate counsel was ineffective because he failed to augment the record on appeal to include a transcript reflecting jury voir dire and the opening statements and closing arguments of counsel. Defendant asserts that such a transcript could expose potential errors committed by the trial judge in ruling on certain objections, motions, prosecutorial misconduct and incompetence of trial counsel, if any.

Whether a transcript of jury voir dire and the opening statements and closing arguments, of counsel could expose "arguable" issues is a matter upon which we cannot speculate. Appellant asks us to augment the record on our own motion. We decline to do so. Suffice it to say that newly appointed appellate counsel can move to augment the record as we shall reinstate defendant's appeal.

Defendant also contends that his appellate counsel was incompetent because he failed to argue that the aiding and abetting instructions given to the jury were insufficient to convey the essential elements of aiding and abetting to the jury.

While the *Beeman* decision could not then have determined the outcome of the appeal in this case, whether precedent existing at the time of defendant's appeal could have been relied upon to attack the sufficiency of the aiding and abetting instructions given to the jury is a question we need not, and do not, determine at this time. (*People* v. *Yarber* (1979) 90 Cal.App.3d 895, 912 [153 Cal.Rptr. 875], *People* v. *Terry* (1970) 2 Cal.3d 362, 401 [85 Cal.Rptr. 409, 466 P.2d 961], cert. dism., *Terry* v. *California* (1972) 406 U.S. 912 [32 L.Ed.2d 112, 92 S.Ct. 1619] and *People* v. *Vasquez* (1972) 29 Cal.App.3d 81, 87 [105 Cal.Rptr. 181].)

■ While conflicting decisions also existed (see cases enumerated in *People* v. *Beeman, supra,* 35 Cal.3d at p. 556), we do note that *Feggans* imposes on appellate counsel the duty to "[advocate] changes in the law if argument can be made supporting change." (*People* v. *Feggans, supra,* 67 Cal.2d at p. 447.) Whether a change should have been advocated in this case is a question we leave for the rebriefing of this appeal.

In summation, we conclude that defendant was denied the effective assistance of appellate counsel to which he was constitutionally entitled and is therefore entitled to have his appeal determined anew.

Nothing we have said herein is intended to suggest how a particular issue will ultimately be resolved or to limit the issues that may be raised on appeal.

The motion to recall the remittitur is granted on the sole ground that defendant Jesus Alfonso Valenzuela was deprived of his constitutional right to the effective assistance of appellate counsel. The remittitur heretofore issued in 2d Civil No. 38520 on September 8, 1981, is recalled, our decision of July 8, 1981, is vacated and the appeal is reinstated. Pursuant to Penal

Code section 1240, subdivision (a)(1), the state public defender is appointed to represent defendant Jesus Alfonso Valenzuela.

Woods, P. J., and Arguelles, J., concurred.