[No. F011737. Fifth Dist. June 6, 1990.]

ERIC EDWARD GALLENKAMP, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

[And five other cases.]*

*Bradford v. West Kern Municipal Court District (No. F012099); Frazier v. Superior Court of Kern County (No. F012805); People v. Rhoden (No. F013249); People v. Wilson (No. F013250); People v. Clark (No. F013251).

2

COUNSEL

Willard L. Weddell, Public Defender, Anthony R. Brent, Deputy Public Defender, and Jeanne W. Peden for Petitioner.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Appellant in Nos. F013249, F013250 and F013251 and for Real Parties in Interest in Nos. F011737, F012099 and F012805.

R. B. VanderNoor for Defendants and for Respondents in Nos. F013249, F013250 and F013251.

No appearance for Respondent in Nos. F011737, F012099 and F012805.

OPINION

ARDAIZ, Acting P. J.—The cases before us were consolidated for consideration by this court in January of 1990. Three of the cases are certified appeals from the Appellate Department of the Superior Court of Kern County; the other three are petitions for writs of mandate or prohibition. All the cases raise issues surrounding the effect of the failure of the Kern County Superior Court Clerk's office to file timely remittiturs after opinions of the appellate department became final.

Defendants in the three certified appeals, *People* v. *Rhoden* (No. F013249), *People* v. *Wilson* (No. F013250), and *People* v. *Clark* (No.

F013251), had challenged the municipal court's pretrial denial of their motion to strike enhancement allegations of prior drunk-driving convictions associated with pending drunk-driving charges. The appellate department of the superior court, in an opinion issued on August 1, 1988, upheld the ruling of the municipal court. The remittitur was entered in the superior court on October 31, 1988; the West Kern County Municipal Court filed the remittitur on November 1, 1988.

After remittitur, the three defendants brought motions to dismiss in the municipal court, claiming they were deprived of their rights to a speedy trial. The court granted their motions and dismissed their cases. The People then appealed the dismissals to the appellate department of the superior court. The appellate department reversed the orders of dismissal of the lower court. These three appeals were then certified to this court.

In Gallenkamp v. Superior Court (No. F011737), petitioner was charged with a codefendant in municipal court by complaint with two counts of violation of Penal Code section 245, subdivision (a)(1), assault with a deadly weapon, a car. He was convicted after a jury trial in municipal court and sentenced to 45 days in custody as a condition of probation. He and his codefendant appealed the convictions. The appellate department rendered its decision on June 12, 1987, affirming petitioner's conviction while reversing the conviction of his codefendant. Petitions for rehearing and certification were denied by the appellate department. The superior court clerk's office did not issue remittitur until June 1, 1988; remittitur was not transmitted to the West Kern County Municipal Court until June 17, 1988.

In Bradford v. West Kern Municipal Court District (No. F012099), petitioner Bradford and 16 other petitioners were defendants in misdemeanor criminal actions pending before the West Kern County Municipal Court. Their appeals of the denial of pretrial suppression motions were decided together by the appellate department under two case numbers, Nos. A-837 and A-870. On June 22, 1988, the appellate department issued its opinion in these cases affirming the denial of the petitioners' motions to suppress.

Exhibits submitted with the petition show the remittitur was entered by the superior court clerk on August 16, 1988, in case No. A-837. There is no indication that anyone was notified of its entry or that it was transmitted to the municipal court. On September 27, 1988, the municipal court made inquiries to the appellate department about the status of both cases. On January 17, 1989, the municipal court filed the remittitur in case No. A-837. The next day, the municipal court inquired about the status of the defendants in case No. A-870.

On January 27, 1989, the defendants in case No. A-837 objected to further proceedings and moved to dismiss the case for lack of a speedy trial. On February 10, 1989, the court heard the motion for dismissal. The court denied the motion. The four defendants then filed a petition for writ of mandate or prohibition in the superior court seeking review of the denial of their motion to dismiss. The superior court set hearing for April 7, 1989.

On February 28, 1989, the 13 defendants in case No. A-870 filed motions in the municipal court to dismiss for lack of a speedy trial. These were set for hearing on March 10, 1989. On March 2, 1989, the superior court finally had entered the remittitur in these cases; the remittitur was filed in the municipal court on March 3. The prosecutor's motion to dismiss the speedy trial motions for lack of jurisdiction were found to be mooted by the filing of the remittitur.

On March 10, 1989, the court heard the motions to dismiss. One week later, on March 17, the court denied the motion. The subsequent petition for writ of mandate or prohibition filed by the No. A-870 defendants eventually was consolidated with the earlier petition of the No. A-837 defendants in the superior court.

The superior court denied the petitions on April 20, 1989. On May 2, 1989, the defendants filed petitions for writ of mandate or prohibition in this court.

In Frazier v. Superior Court of Kern County (No. F012805) petitioner was the criminal defendant in a West Kern County Municipal Court action wherein he was charged with being under the influence of phencyclidene. (See Health & Saf. Code, § 11550, subd. (b).) A jury found him guilty of the charge; he was sentenced to 150 days in custody as a condition of probation. He appealed his conviction to the appellate department. By a decision filed March 5, 1987, his conviction was affirmed. The case was certified by the appellate department; this court, on May 14, 1987, denied the request to transfer the case.

Over 17 months later, on October 28, 1988, the superior court clerk's office entered remittitur. A copy of the remittitur was filed in the municipal court on November 18, 1988. On January 19, 1989, petitioner filed a petition for writ of habeas corpus in the superior court claiming the untimely remittitur was void and the case should be dismissed. On May 3, 1989, the superior court denied the petition. On September 29, 1989, petitioner filed the petition herein for writ of mandate or prohibition.

In January of this year, this court consolidated consideration of these appeals and petitions, issuing an order to show cause in each of the petitions for writ relief.

# I

### *Whether the Failure to Issue the Remittitur in a Timely Manner Voided the Judgment of the Court.*

In substance, each appellant and/or petitioner before us claims the tardy filing of the remittitur resulted in a violation of statutory or constitutional rights to speedy trial or deprived the court of power to act. In order to assess the merits of the claims, a discussion of remittitur is necessary to define its effect legally and jurisdictionally.

Historically, it would appear that remittitur (Latin for "it is sent back") occurred when the House of Lords, after issuing a writ of error, literally sent back the physical record in a case to the King's Bench. (See *Noel* v. *Smith* (1905) 2 Cal.App. 158, 161 [83 P. 167].) Upon receipt of the record, the lower court entered the judgment of the lords and could then act upon such judgment. The *Noel* court noted that with contemporary usage: " . . . the word *'remittitur'* has received an additional meaning to that originally given to it, and, as used in the above rule, is the term employed to designate the judgment of the appellate tribunal which is authenticated to the court from which the appeal is taken or over which its controlling jurisdiction is exercised, and corresponds to the 'mandate' used in the practice of the United States supreme court." (*Id.* at p. 162.)

California Rules of Court, rule 191[1] governs the issue of when the courts are required to file remittitur after decision by the appellate department in criminal matters:

"(a) Upon the expiration of the period during which a transfer may be ordered, unless a new trial is to be had in the superior court, the clerk of the superior court shall remit to the court from which the appeal was taken a certified copy of the judgment of the superior court and of its opinion, if any, and also all the original exhibits, orders, affidavits, papers and documents which were sent to said superior court in connection with said appeal, except the statement or transcript on appeal and the notice of appeal. After such certified copy of the judgment has been remitted to the court below, the superior court has no further jurisdiction of the appeal or of the proceedings thereon, and the lower court shall make all orders necessary to carry its judgment or order into effect or otherwise proceed in conformity to the decision on appeal.

"(b) The court may direct the immediate issuance of the remittitur on stipulation of the parties.

---

[1] All further references to a rule or rules shall be to the California Rules of Court.

"(c) The court, for good cause, may stay the issuance of the remittitur for a reasonable period.

"(d) A remittitur may be recalled by order of the court on its own motion, on motion after notice supported by affidavits, or on stipulation setting forth the facts which would justify the granting of a motion."

Rule 107 governs the finality of appellate department opinions: "(a) At any time before a judgment of an Appellate Department becomes final, as hereinafter provided it may vacate such judgment and order a rehearing.

"(b) Unless a rehearing is ordered, every judgment of an appellate department shall become final as follows:

"(1) Upon the expiration of 15 days after the judgment is pronounced, unless a petition for rehearing is filed within that time;

"(2) If a timely petition for rehearing is filed, upon the expiration of 30 days after the judgment is pronounced or upon the denial of all such petitions, whichever is earlier.

"(3) Where the judgment is modified before it becomes final, as above provided, the period specified herein begins to run anew, as of the date of modification; but a change of the opinion without modification of the judgment does not postpone the time when the judgment becomes final.

"(c) A petition for a rehearing shall be served on all adverse parties before filing, and filed within 15 days after the judgment is pronounced, and shall not be filed unless accompanied by proof of service. An answer to the petition may be served on the petitioning party and filed, if accompanied by proof of service, within eight days after service of the petition. If a rehearing is ordered, the appellate department may place the case on the calendar for further argument or submit it for decision.

"(d) The periods of time specified in this rule shall be computed as provided in the Code of Civil Procedure, and extended in the cases and to the extent specified by section 12a of said code, but shall not be otherwise extended."[2]

Some of the other rules discussing the issuance of remittitur are more detailed. These rules discuss remittitur in the context of particular

---

[2] See also rules 62 and 63, relating to the certification and transfer of opinions from the appellate department to the Court of Appeal.

reviewing courts—in conjunction with appeals to the Supreme Court and Courts of Appeal, rule 25; regarding causes originally before the appellate division which are transferred to the Court of Appeal, rule 68; civil appeals from municipal or justice courts to the appellate department, rule 144; and the specific rule relating to criminal appeals from municipal and justice courts to the appellate department, rule 191. Provisions of these other sections are pertinent, however, insofar as they help reveal the nature of remittitur in general. While different rules may regulate the issuance of remittitur in different situations, the nature of remittitur must be consistent in all contexts.

Rule 25(a) provides: " . . . The remittitur shall be deemed issued on the clerk's entry in the record of the case, and shall be transmitted immediately, with a certified copy of the opinion or order, to the lower court, board or tribunal." Rule 68 states: "The remittitur, upon issuance, shall be transmitted immediately, with a certified copy of the judgment and of the opinion, to the court from which the appeal was originally taken . . . ."

■ The above history and rules suggest that, modernly, the essence of remittitur is the returning or revesting of jurisdiction in an inferior court by a reviewing court. The reviewing court loses jurisdiction at the time of remittitur and the inferior court regains jurisdiction. (See *Kohle* v. *Sinnett* (1955) 136 Cal.App.2d 34, 37 [288 P.2d 139].) Remittitur transfers jurisdiction back to the inferior court so that it may act upon the case again, consistent with the judgment of the reviewing court. While certified copies of the judgment or opinion or record might also be remitted or attached to the remittitur, they are distinct from the remittitur. Transmission of the remittitur—the actual "sending"—also appears to be distinct from the issuance of the remittitur.

■ Because it may not be appropriate for the inferior court to receive the power to act upon a case immediately upon the reviewing court's opinion becoming final, the rules relative to when remittitur should issue are necessarily nonspecific. For example, while opinions of the Court of Appeal become final in 30 days (rule 24), the court may delay remittitur until after the time for the filing of a petition for review in the California Supreme Court has passed, 60 days after the opinion is filed (rule 28), or until review is denied. Further, a remittitur may be recalled having once been issued. In *People* v. *Valenzuela* (1985) 175 Cal.App.3d 381 [222 Cal.Rptr. 405], based on ineffective assistance of appellate counsel, the court recalled a remittitur issued four years previously.

An appellate department opinion confronts similar considerations. If the opinion is published, the Court of Appeal has 20 days in which it can

choose to hear the matter. (Rule 62(b).) Similarly, petitions for rehearing in the appellate department or requests for certification to the Court of Appeal can prolong the time the superior court would keep jurisdiction. Also, like this court, the appellate department is given the power to stay the issuance of remittitur and the power to recall remittitur.

In light of these rules, the facts disclose that, in the certified appeals, the appellate department opinion became final on August 16 and the remittitur issued October 31, some seven weeks after the opinion became final. The remittitur was filed the next day in the municipal court. In Gallenkamp, the decision rendered on June 12, 1987, would have become final no later than July 12. Remittitur issued on June 1, 1988, over 10½ months after the opinion was final. Remittitur was not filed in the municipal court until the 17th of June—it is not clear whether transmission of the remittitur by the superior court clerk's office was delayed or whether filing by the municipal court clerk was delayed. In the Bradford case, the opinion relative to both cases issued on June 22, 1988, and became final on July 7, 1988. In the No. A-837 case, remittitur was issued (that is, was entered) on August 16, only six weeks after the opinion was final. However, it was not filed in the municipal court until January 17, 1989. Thus, it would appear transmission did not occur for another five months. In the No. A-870 case, remittitur issued on March 2, 1989, almost eight months after the opinion was final. It was filed in the municipal court the next day. Finally, in the Frazier case, this court's denial of the certification request immediately finalized the opinion on May 14, 1987. (See rule 24(a).) Over 17 months later, the superior court clerk's office issued remittitur on October 28, 1988. This was not filed in the municipal court for yet another three weeks, on November 18, 1988.

While we will discuss the consequences of the late filings, *post*, it is readily apparent that we are not dealing with an isolated case that has been misplaced or overlooked. Rather, what is clear is a substantial breakdown in the management of case file control. Nonetheless, this observation does not resolve the issue before us by way of appeal and writ. We are called upon here to decide what effect this clerical dereliction has upon the power of the courts and the rights of the appellants and petitioners before us.

▉ Petitioners Gallenkamp and Frazier argue that the issuance by the superior court of the belated remittiturs was an act in excess of its jurisdiction, as they contravened the mandates of established procedure and time limits, and were thus void.[3] While it may be conceded the delinquent

---

[3] We note both Gallenkamp and Frazier had been tried and suffered convictions prior to the unduly extended appeals—speedy trial rights are not implicated in these cases. As acknowledged by counsel, their time in custody was stayed pending resolution on appeal.

issuance by the superior court clerk's office of remittitur contravened both good practice and the spirit of the rules of court governing issuance, petitioners do not demonstrate such act was in excess of jurisdiction or that the consequence of such delinquency is to void the act or judgment.

As discussed above, issuance of remittitur is the act by which jurisdiction is transferred from a reviewing court to the court reviewed. Delay in performance of this act results merely in a delay in the transfer of jurisdiction; it does not result in the loss of jurisdiction by the reviewing tribunal. Unless a higher court takes the case, the reviewing court retains jurisdiction until the remittitur issues. Until remittitur issues, the lower court cannot act upon the reviewing court's decision; remittitur ensures in part that only one court has jurisdiction over the case at any one time.

■■■ The relevant statutes and rules of court do not strictly prescribe the period within which remittitur must issue. As we have indicated, all the different possible dispositions at the time the reviewing court issues its opinion necessarily compel some nonspecificity of time in the "rules" surrounding when remittitur should issue. While we must acknowledge the remittiturs issued here clearly were excessively late, the lateness did not violate any strict specification of time because there is none.

Further, the rules do not describe the consequences of having remittitur issue late.

■■■ Finally, the rules do not provide that even in the absence of the issuance of remittitur jurisdiction will revest in the inferior court. This is important because, we will presume, jurisdiction must lie somewhere. Unless the rules, statutes or case law provide for the automatic change of jurisdiction from the reviewing court absent the issuance of a remittitur, jurisdiction remained with the reviewing court. Thus, we cannot say the court was without jurisdiction to issue the late remittitur and therefore such act was not in excess of jurisdiction. In other words, jurisdiction did not lie with a higher court and it had not revested in the lower court—it necessarily must have been with the reviewing court.

Petitioners' citation of *Rodman* v. *Superior Court* (1939) 13 Cal.2d 262, 270 [89 P.2d 109], does not help. In *Rodman*, the court, upon the conviction and sentencing of a criminal defendant, ordered that from the money posted for bail by a third person the amount of the fines levied against the defendant were to be subtracted from the bond money before exoneration. Because this disposition of the funds was not permitted by statute, the reviewing court found the act as one in excess of jurisdiction. (*Id.* at pp. 268-269.) We find no parallels or analogy to the problems here—the rele-

vant rule leaves the matter nonspecific, the clerk's conduct violated the spirit though not the letter of that rule. Also, the issue of excess of jurisdiction arose in *Rodman* because the respondents challenged the propriety of the court's consideration of the matter under a writ of certiorari. (*Id.* at p. 268.) *Rodman* does not invalidate or void the judgment of conviction or decision of the court because the trial court acted in excess of its jurisdiction.

Neither do we find any help in *In re Bakke* (1986) 42 Cal.3d 84 [227 Cal.Rptr. 663, 720 P.2d 11]. There, a convicted misdemeanant appealed his conviction and sought a stay of execution of his sentence while the appeal was pending. Over four years later the appellate department issued the opinion in his appeal; remittitur issued the same day. The California Supreme Court decided that "while the stay of execution of the jail term does not in itself stay any other provision of the probation order, the court does retain jurisdiction to enforce the jail term because the defendant, in seeking the stay, waives the right to object to execution of the jail term upon completion of the appeal." (*Id.* at p. 86.) In noting the opinion and remittitur issued the same day, the *Bakke* court specifically stated that this could be done only with the concurrence of the parties. (Rule 191(b); *In re Bakke, supra*, 42 Cal.3d at p. 86, fn. 2.) We reject petitioners' attempt to transform the court's statement that a stay lasts "to the time the judgment is affirmed and the remittitur goes down" (*id.* at pp. 89-90) to an indication that these things must occur simultaneously.

The court in *Combs* v. *Haddock* (1962) 209 Cal.App.2d 627, 631 [26 Cal.Rptr. 252], characterized the issuance of remittitur as a ministerial act. Petitioners point to no case wherein the failure to perform a ministerial act resulted in the loss of jurisdiction or operated to void the judgment. And, without denigrating the inappropriateness of the clerk's dereliction, petitioners summon no arguments as to why, as a matter of policy, such tardiness on the clerk's part should void the judgment.

We agree that promotion of the orderly administration of justice and prompt disposition of cases are laudable goals. (See *Wallace* v. *Municipal Court* (1983) 140 Cal.App.3d 100, 105 [189 Cal.Rptr. 886].) However, we do not see how voiding the judgment of the court because of the tardiness of the clerk will promote either goal. If we declared here the transference of jurisdiction from the reviewing court to the one reviewed by operation of law rather than issuance of remittitur, without any statutory provision or guidance of the rules, only disorder could follow. Formal notice would become secondary to the performance of a ministerial act. Consequences could accrue without anticipation of intervention. Neither do we see how

dismissing a criminal conviction because of a clerical failure would promote prompt disposition—dismissal of the case will not "punish" the offender.

## II

*Whether Petitioners and Appellants Were Deprived of Their Statutory Speedy Trial Rights.*

Appellants in the certified appeals and petitioners in the Bradford case all claim they were deprived of their rights to a speedy trial. Specifically, each claimed protection under the Constitutions of the United States and the State of California, as well as under Penal Code section 1382.

Article I, section 15 of the California Constitution provides that "[t]he defendant in a criminal cause has the right to a speedy public trial . . . ." This right has been implemented in part by the Legislature with the provisions of Penal Code section 1382. Penal Code section 1382 provides in relevant part: "The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases:

"· . . . . . . . . . . . . . . . . . .

"(c) Regardless of when the complaint is filed, when a defendant in a misdemeanor case in an inferior court is not brought to trial within 30 days after he or she is arraigned or enters his or her plea, whichever occurs later, if the defendant is in custody at the time of arraignment or plea, or in all other cases, within 45 days after the defendant's arraignment or entry of the plea, whichever occurs later, or in case the cause is to be tried again following a mistrial, an order granting a new trial from which an appeal is not taken, or an appeal from the inferior court, within 30 days after the mistrial has been declared, after entry of the order granting the new trial, *or after the remittitur is filed in the trial court* or, if the new trial is to be held in the superior court, within 30 days after the judgment on appeal becomes final; . . ." (Italics added.) ▇ In all cases not covered by the statute, a trial court will evaluate a speedy trial complaint based upon the state right by weighing the prejudicial effect of the delay against the justification for the delay. (*Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 93 [106 Cal.Rptr. 786, 507 P.2d 90]; see also *Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 740 [91 Cal.Rptr. 578, 478 P.2d 10].)

▇ The Sixth Amendment to the United States Constitution likewise provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." The Sixth Amendment is applicable to the states through the Fourteenth Amendment. (*Klopfer* v. *North Carolina*

(1966) 386 U.S. 213, 223 [18 L.Ed.2d 1, 8, 87 S.Ct. 988].) To determine whether the federal constitutional right to a speedy trial has been violated, the United States Supreme Court in *Barker* v. *Wingo* (1972) 407 U.S. 514, 530 [33 L.Ed.2d 101, 116-117, 92 S.Ct. 2182], announced a four-factor balancing test. The factors include "the length of the delay, the reason for the delay, the defendant's assertion of his right to be brought to trial, and prejudice caused by the delay." (*People* v. *Hill* (1984) 37 Cal.3d 491, 496 [209 Cal.Rptr. 323, 691 P.2d 989].)

■ Of course, the fact that a trial is sufficiently "speedy" in one forum does not ensure that it will pass muster in the other. Defendants brought to trial within the prescribed state statutory period may still be entitled to relief under the federal Constitution (see *Sykes* v. *Superior Court, supra,* 9 Cal.3d at p. 91, fn. 9) and conversely, the state Constitution may be more protective of speedy trial rights in other situations. (See *People* v. *Hill, supra,* 37 Cal.3d at p. 497, fn. 3.)

■ The appellants in the certified appeals and the petitioners in Bradford seek first the protection of Penal Code section 1382. The decision of the municipal court, which granted the appellants' motions to dismiss for lack of a speedy trial, as reflected in the superior court's opinion, suggests the municipal court rested its decision on the time limits embodied in Penal Code section 1382, subdivision (c).

"The court notes in the instant cases that both counsel were aware of the Appellate decision through written notice on August 2, 1988. Defense counsel argues that the court had jurisdiction to proceed once the notice was received by the parties on August 2, 1988. Such is not the case. Court rules allow the clerk's office thirty (30) days after rendition of decision to file a Remittitur to the lower court. Thereafter, the West Kern Municipal Court has forty-five (45) days to bring each out-of-custody Defendant to trial, absent time waivers.

"In the instant case, the clerk's office took eighty-nine (89) days to issue a Remittitur. Thereafter, the Municipal Court was incapable of bringing each Defendant to trial within the statutory time period."

A careful reading of Penal Code section 1382 belies the court's dependence upon it. Penal Code section 1382, subdivision (c), dealing with misdemeanor defendants in an inferior court, requires trial "within 30 days after the . . . *remittitur is filed in the trial court* . . . ." (Italics added.) Statutory time begins to run upon the filing of remittitur in the trial court. Until the remittitur is filed, section 1382 imposes no exact time limits. Thus, by its

terms, Penal Code section 1382 was not violated here when the clerk belatedly filed remittitur.

Petitioners note, however, several cases apply the time limits in Penal Code section 1382 even though the particular procedural situation is not covered by section 1382. In *Sykes* v. *Superior Court, supra*, the court found the time limits applied to defendants who vindicated their right to retrial by way of writ rather than appeal. (9 Cal.3d at pp. 92-93.) In *Matthews* v. *Superior Court* (1973) 35 Cal.App.3d 589 [110 Cal.Rptr. 843], the court found the strictures of Penal Code section 1382 applied when a writ petition to a reviewing court was denied. A similar rationale was used by the court in *People* v. *C. F. Braun & Co.* (1977) 71 Cal.App.3d Supp. 12 [139 Cal.Rptr. 857] when the court applied Penal Code section 1382 to a misdemeanor defendant's right to trial following an unsuccessful petition to the California Supreme Court. The problem with each of these cases is that the court was faced with a situation *not covered* by the language of Penal Code section 1382. Further, they encompass final orders being filed and jurisdiction restored in the lower court at the inception of the calculation of time. Here, the Legislature did anticipate this situation and provided that the time to compute a speedy trial would begin when remittitur was filed in the trial court.

From the situation here, it is clear the statute as drafted has left unresolved one aspect of otherwise tightly regimented statutory time requirements ensuring a speedy trial. The statute does not consider the possibility of the type of systemic failure as we had here. However, this oversight on the part of the Legislature does not allow us to create our own event from which we compute time. The statute directs us to mark time from the filing of the remittitur in the trial court, not from when the remittitur should have been filed. Thus, the lateness of the remittitur postpones the time when the statutory period begins. Neither the appellants in the certified appeals nor petitioners show that a timely trial was not afforded them once remittitur was filed.

The statutory time limits of Penal Code section 1382 were not violated here.

## III

*Whether Petitioners and Appellants Were Deprived of Their Constitutional Speedy Trial Rights.*

Even though Penal Code section 1382 provides no relief for petitioners and appellants, the California and federal Constitutions also protect the

right to a speedy trial. However, analysis under the state or federal standards does not support a finding of violation of the right to a speedy trial.

██ ██ The California constitutional test requires the court to balance the prejudice suffered by a defendant against the justification for delay. Under Penal Code section 1382 analysis, prejudice is presumed once the statutory period has passed; a defendant need not show any other harm. (*Sykes* v. *Superior Court, supra*, 9 Cal.3d at p. 89.) Under the balancing test, however, a defendant must demonstrate actual prejudice. (*Overby* v. *Municipal Court* (1981) 121 Cal.App.3d 377, 386 [175 Cal.Rptr. 352], disapproved on another point in *Serna* v. *Superior Court* (1985) 40 Cal.3d 239, 262, fn. 16 [219 Cal.Rptr. 420, 707 P.2d 793].)

The record before us is bereft of any evidence presented or argued by appellants or petitioners below as to prejudice.[4] While we can conceive of many things which might happen over the periods involved here with the Bradford petitioners to prejudice their case, no argument was made below. Since petitioners failed in their initial burden to show prejudice, the prosecution never was called upon to show any justification for delay. (*Ibarra* v. *Municipal Court* (1984) 162 Cal.App.3d 853, 858 [208 Cal.Rptr. 783].)

 Similarly, under the test enunciated in *Barker* v. *Wingo, supra*, we find no violation of the federal constitutional right to a speedy trial. As the court in *United States* v. *Dennard* (11th Cir. 1984) 722 F.2d 1510, 1513, stated: "The length of the delay is the 'triggering mechanism' of the *Barker* analysis. 'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' 407 U.S. at 530 . . . ." We will presume for the sake of argument here that the six- to eight-month delays in the Bradford cases were sufficient to trigger further analysis. (But see *United States* v. *Nance* (9th Cir. 1982) 666 F.2d 353, 360-361, and *United States* v. *Diaz-Alvarado* (9th Cir. 1978) 587 F.2d 1002, 1005 (five-month delay insufficient to trigger further *Barker* analysis).) The length of the delays was not excessive. (See, e.g., *Moore* v. *Arizona* (1973) 414 U.S. 25, 27 [38 L.Ed.2d 183, 186, 94 S.Ct. 188] (three-year delay); *United States* v. *Fernandez* (S.D.Fla. 1988) 694 F.Supp. 858, 860 (three- to four-year delay).)

No apparent reason for the delays existed other than clerical dereliction. Petitioners did not do anything to shorten the period of delay—arguably

---

[4] We will not further discuss the certified appeals here. The trial court analyzed the speedy trial motion solely and, as found above, inappropriately under Penal Code section 1382. Counsel was not called upon to make any factual showing of prejudice or of any of the *Barker* criteria to support his motion. We find these appellants should not be precluded from making such a showing below. We express no opinion as to the likelihood of success.

they could have made demands upon the prosecutor or brought a mandate action directed to the clerk's office, especially in light of their awareness of the appellate court's ruling. However, as noted by the trial court, they simply did nothing until after the remittitur was filed in the trial court. We find a certain incongruity in parties who complain of delay they are aware of, but do nothing to alleviate its effects. (See *United States* v. *Dennard, supra,* 722 F.2d at p. 1513; see also *Karubian* v. *Security Pacific Nat. Bank* (1984) 152 Cal.App.3d 134, 139 [199 Cal.Rptr. 295].)

No prejudice was shown. Petitioners attempt to rely upon the "presumptively prejudical" length of the delay, which was needed in order to warrant further analysis under *Barker,* to satisfy their burden to show prejudice. Unless, however, "the first three *Barker* factors weighed heavily against the government, the defendants must demonstrate actual prejudice." (*United States* v. *Mitchell* (11th Cir. 1985) 769 F.2d 1544, 1547; see also *United States* v. *Diaz-Alvarado, supra,* 587 F.2d 1002, 1005 (noting the absence of a showing of actual prejudice).)

Reviewing the evidence in light of the *Barker* factors results in an affirmation of the decisions made below.

The judgments of dismissal in the certified appeals are reversed and the matter remanded to the municipal court for further proceedings consistent with this opinion. The order to show cause is discharged and the petitions for writ of mandate denied.

Vartabedian, J., and Thaxter, J., concurred.